# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Case No. 08-cv-00362-REB

HUE XUAN KY,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

# ORDER REVERSING DISABILITY
# DECISION AND REMANDING TO COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#3], filed February 21, 2008, seeking review of the Commissioner's decision denying plaintiff's claim for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of blindness in her right eye, macular changes in her left eye, and cervical facet disorder. After her application for supplemental security income benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on May 16, 2007. At the time of the hearing, plaintiff was 60 years old. She has a high school education in her native

Vietnam past relevant work experience as a general clerk.  She has not engaged in substantial gainful activity since March 4, 2005.

The ALJ found that plaintiff was not disabled and therefore not entitled to supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity to perform light work with certain limitations.  The ALJ concluded that plaintiff could return to her past relevant work, both as performed in the national economy and as she actually performed it.  He therefore found plaintiff not disabled at step four of the sequential evaluation.  Plaintiff appealed that decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the

2

claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

>  1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
>  2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
>  3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
>  4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
>  5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  **See also Williams v. Bowen** 844 F.2d 748, 750-52 (10th Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four steps of this analysis.  **Bowen v. Yuckert**, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  **Id.**  A finding that

the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff first claims the ALJ erred in assessing her residual functional capacity. The ALJ determined at step four of the sequential evaluation process that plaintiff had the residual functional capacity for light work with certain restrictions. Significant among these were restrictions based on plaintiff's limited visual acuity:

4

> [C]laimant does not possess the ability to perform tasks that
> require depth perception; however, she is able to avoid
> ordinary hazards in the workplace such as boxes on the
> floor, doors ajar, and approaching people and vehicles; is
> able to read very small print, ordinary newspaper print, or
> book print; and is able to determine differences in shape and
> color of small objects such as screws, nuts, or bolts with her
> left eye.

(Tr. 20.) Because there is no dispute that plaintiff has been legally blind in her right eye at all times relevant to the ALJ's decision, the above conclusions necessarily implicate plaintiff's left-eye vision. The record contains only two notations to plaintiff's left eye.[1] In the first, Dr. Julia L. Robinson, an optometrist who had treated plaintiff in the past, noted in May, 2006, that plaintiff's vision in her left eye was 20/40 and questioned whether this deterioration was due to macular changes. She recommended plaintiff see a retinal specialist ophthalmologist, stressing that plaintiff was in danger of going blind in her left eye as well. (Tr. 140-141.) The second record reference is contained in a Physical Residual Functional Capacity Assessment form filled out by a Single Decision Maker ("SDM")[2] in July, 2005, shortly after plaintiff filed her claim for benefits. Therein, the SDM notes that "[l]eft eye is unlimited other than depth perception." (Tr. 134.) The ALJ relied on this latter opinion in making his determination regarding plaintiff's functional visual limitations. (*See* Tr. 24.)

---

[1] Although the record may contain further such references, the majority of the medical evidence submitted by plaintiff's two treating sources is almost entirely illegible. On remand, the ALJ may find it advisable to recontact these medical sources to help resolve this issue.

[2] Colorado is one of ten states participating in the Commissioner's Plan for a New Disability Claim Process. *See* 59 Fed. Reg. 47887 (Sept. 19, 1994). This pilot program is testing several model procedures for streamlining the administrative review process, including use of an SDM, rather than a team composed of a disability examiner and a medical consultant, to make the initial determination of disability. *See* 62 Fed. Reg. 49598 (Sept. 23, 1997).

In doing so, the ALJ erred. The ALJ erroneously referred to the SDM's report as having been authored by "non-examining medical consultants employed by [the Commissioner]." (Tr. 24.) To the contrary, an SDM is not a medical professional of any stripe, and the opinion of an SDM therefore is entitled to no weight. ***Velasquez v. Astrue***, 2008 WL 791950 at *3 (D. Colo. Mar. 20, 2008) (Blackburn, J.) (citing ***Goupil v. Barnhart***, 2003 WL 22466164 at * 2, n.3 (D. Me. Oct. 31, 2003)). The only other evidence of record regarding plaintiff's left-eye visual acuity is the May, 2006, report of Dr. Robinson, which at the very least raises a question as to how much vision plaintiff has in her left eye.[3] Although the ALJ noted Dr. Robinson's findings (Tr. 23), and found that the macular changes in plaintiff's left eye constituted a severe impairment, he never explained how Dr. Robinson's findings related to the functional visual abilities he concluded plaintiff possessed. His findings in this regard thus are not based on substantial evidence and cannot stand.

Moreover, the ultimate conclusion the ALJ drew from his findings regarding plaintiff's visual limitations – that plaintiff could return to her past relevant work – is problematic because the record contains no evidence suggesting what the visual demands of plaintiff's previous employment were:

> Step four of the sequential analysis . . . is comprised of three phases[:]
>
>> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), ... and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work.... In the final phase, the ALJ determines whether the claimant

---

[3] The intricacies of this issue are further compounded by plaintiff's testimony that she could not afford the new prescription her deteriorating eyesight necessitated.

>has the ability to meet the job demands found in phase two
>despite the mental and/or physical limitations found in phase
>one. . . . At each of these phases, the ALJ must make
>specific findings.

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations and internal quotation marks omitted). The ALJ never undertook the second step of the above-described analysis. Nor was this error ultimately harmless. Although plaintiff was able to work for several years in her prior position despite her right-eye blindness, the evidence also shows that plaintiff was fired when the company changed hands because the new employer thought she could not perform the demands of the job. Thus, it is not clear what level of visual acuity, if any, was required for the position. Plaintiff's testimony about the functions she performed at her job were not enlightening in this regard either. Moreover, the evidence suggests that plaintiff's remaining vision has deteriorated, perhaps substantially, since her employment ended. For these additional reasons, therefore, remand is indicated.

Plaintiff also claims the ALJ erroneously discredited her subjective reports of disabling limitations. I agree that at least some of the reasons cited by the ALJ as undermining plaintiff's credibility are potentially unsound.[4] Because the case must be remanded in any event, the ALJ should reexamine his findings in this regard as well.[5]

---

[4] For example, the ALJ noted that plaintiff was able to work from 1997 to 2001 despite her right eye blindness. (Tr. 22.) This observation, however, fails to account for the subsequent deterioration in plaintiff's left-eye vision found by Dr. Robinson in 2006. Similarly, the ALJ's reliance on the fact that plaintiff did not see the retinal specialist recommended by Dr. Robinson (Tr. 23) ignores record evidence that plaintiff claimed she could not afford such care. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (citing cases) (principle that failure to obtain treatment for a remediable condition may constitute some evidence that the condition is not disabling inapplicable where the claimant's lack of treatment is attributable to indigence).

[5] I do not intimate by this ruling that plaintiff is or should be found disabled.

**THEREFORE, IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **REVERSED**;

2. That this case is **REMANDED** to the ALJ, who is directed to:

    a. Recontact any treating or examining physicians for further clarification of their findings, seek the testimony of medical experts, order consultative examinations, or otherwise further develop the record as he deems necessary;

    b. Reevaluate plaintiff's physical residual functional capacity, articulating fully his findings in this regard;

    c. Reevaluate plaintiff's credibility; and

    d. Reassess the disability determination; and

3. That plaintiff is **AWARDED** her costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1 and 28 U.S.C. § 2412(a)(1).

Dated January 8, 2009, at Denver, Colorado.

                                              **BY THE COURT:**

                                              **s/ Robert E. Blackburn**
                                              **Robert E. Blackburn**
                                              **United States District Judge**